**Case Docket Entries**

CC-35-2022-C-196

| Court: | **Circuit** | County: | **35 - Ohio** | Created Date: | **11/14/2022** | Security Level: | **Public** |
|---|---|---|---|---|---|---|---|
| Judge: | **Jason A. Cuomo** | Case Type: | **Civil** | Case Sub-Type: | **Tort** | Status: | **Open** |

Related Cases:

Style:    **Maura Anne Kreitzer v. Safeco Insurance**

| | Entered Date | Event | Ref. Code | Description |
|---|---|---|---|---|
| 1 | 11/14/2022 11:46:13 AM | E-Filed | | Complaint |
| | 1-1  11/14/2022 | Civil Case Information Statement | | |
| | 1-2  11/14/2022 | Complaint - Complaint | | |
| | 1-3  11/14/2022 | Transmittal | | |
| | 1-4  11/14/2022 | Summons | | |
| 2 | 11/14/2022 11:46:13 AM | Judge Assigned | J-05005 | Jason A. Cuomo |
| 3 | 11/14/2022 11:46:13 AM | Party Added | P-001 | Maura Anne Kreitzer |
| 4 | 11/14/2022 11:46:13 AM | Party Added | D-001 | Safeco Insurance |
| 5 | 11/14/2022 11:46:13 AM | Party Added | D-002 | Liberty Mutual Insurance Company |
| 6 | 11/14/2022 11:46:13 AM | Party Added | D-003 | Marisa Culbertson |
| 7 | 11/14/2022 11:46:13 AM | Attorney Listed | P-001 | A-10391 - George Nico Sidiropolis |
| 8 | 11/14/2022 11:46:13 AM | Service Requested | D-001 | Secretary of State - Certified - Including Copy Fee |
| 9 | 11/14/2022 11:46:13 AM | Service Requested | D-002 | Secretary of State - Certified - Including Copy Fee |
| 10 | 11/14/2022 11:46:13 AM | Service Requested | D-003 | Secretary of State - Certified - Including Copy Fee |
| 11 | 11/29/2022 9:35:16 AM | E-Docketed | | Service Return - R/S SOS accepted service on behalf of Marisa Culbertson on 11/21/22 |
| | 11-1  11/28/2022 | Service Return - R/S SOS accepted service on behalf of Marisa Culbertson on 11/21/22 | | |
| | 11-2  11/28/2022 | Transmittal | | |
| 12 | 11/29/2022 9:38:33 AM | E-Docketed | | Service Return - R/S SOS accepted service on behalf of Liberty Mutual Insurance Company on 11/21/22 |
| | 12-1  11/28/2022 | Service Return - R/S SOS accepted service on behalf of Liberty Mutual Insurance Company on 11/21/22 | | |
| | 12-2  11/28/2022 | Transmittal | | |
| 13 | 11/29/2022 9:40:00 AM | E-Docketed | | Service Return - R/S SOS accepted service on behalf of Safeco Insurance Company of America on 11/21/22 |
| | 13-1  11/28/2022 | Service Return - R/S SOS accepted service on behalf of Safeco Insurance Company of America on 11/21/22 | | |
| | 13-2  11/28/2022 | Transmittal | | |

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305

**USPS CERTIFIED MAIL™**



**9214 8901 1251 3410 0003 6391 63**



**Mac Warner**
Secretary of State
State of West Virginia
**Phone:** 304-558-6000
886-767-8683
**Visit us online:**
www.wvsos.com

LIBERTY MUTUAL INSURANCE COMPANY
Corporation Service Company
209 West Washington Street
Charleston, WV 25302

**Control Number:** 299668

**Defendant:** LIBERTY MUTUAL INSURANCE
COMPANY
209 West Washington Street
Charleston, WV 25302 US

**Agent:** Corporation Service Company

**County:** Ohio

**Civil Action:** 22-C-196

**Certified Number:** 92148901125134100003639163

**Service Date:** 11/21/2022

I am enclosing:

**1 summons and complaint**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted
service of process in the name and on behalf of your authorized insurance company.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of
process in the name and on behalf of your authorized insurance company as your attorney-in-fact. Please address any
questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper, **not to the
Secretary of State's office.***

Sincerely,

*Mac Warner*

Mac Warner
Secretary of State

**SUMMONS**

E-FILED | 11/14/2022 11:46 AM
CC-35-2022-C-196
Ohio County Circuit Clerk
Brenda L. Miller

## IN THE CIRCUIT COURT OF OHIO COUNTY, WEST VIRGINIA
### Maura Anne Kreitzer v. Safeco Insurance

Service Type:    Secretary of State - Certified - Including Copy Fee

NOTICE TO:    Liberty Mutual Insurance Company, c/o Corporation Service Company, 209 W. Washington St., Charleston, WV 25302

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY:

George Sidiropolis, 729 MAIN ST, WHEELING, WV 26003

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

SERVICE:

| | |
|---|---|
| 11/14/2022 11:46:05 AM | /s/ Brenda L. Miller |
| Date | Clerk |

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to the individual's dwelling place or usual place of abode to

_____ , a member of the individual's family who is above the age of sixteen (16) years and by

advising such person of the purpose of the summons and complaint.

☐ Not Found in Bailiwick

| | |
|---|---|
| _____ | _____ |
| Date | Server's Signature |





West Virginia E-Filing Notice

CC-35-2022-C-196

Judge: Jason A. Cuomo

**To:**  Liberty Mutual Insurance Company
c/o Corporation Service Company
209 W. Washington St.
Charleston, WV 25302

---

# NOTICE OF FILING

---

IN THE CIRCUIT COURT OF OHIO COUNTY, WEST VIRGINIA

Maura Anne Kreitzer v. Safeco Insurance

CC-35-2022-C-196

The following complaint was FILED on 11/14/2022 11:46:05 AM

Notice Date:     11/14/2022 11:46:05 AM

Brenda L. Miller
CLERK OF THE CIRCUIT COURT
Ohio County
1500 Chapline Street
WHEELING, WV 26003

(304) 234-3611
Brenda.Miller@courtswv.gov

FILED
CC-35-2022-C-196
Ohio County Circuit Clerk
Brenda L. Miller

## IN THE CIRCUIT COURT OF OHIO COUNTY, WEST VIRGINIA

| | |
|---|---|
| **MAURA ANNE KREITZER,** | * |
| | * |
| Plaintiff, | * |
| vs. | *  Civil Action No. *22-C-196* |
| | * |
| **SAFECO INSURANCE** | *  Judge: *Cuomo* |
| **COMPANY OF AMERICA,** | * |
| a Liberty Mutual Company, | |
| **LIBERTY MUTUAL INSURANCE** | * |
| **COMPANY** and **MARISA** | * |
| **CULBERTSON,** | * |
| | * |
| Defendants. | * |

---

### COMPLAINT

---

**NOW COMES** your plaintiff, Maura Anne Kreitzer, by and through her undersigned counsel, Jividen Law Offices, PLLC and for her Complaint against the defendants Safeco Insurance Company of America, Liberty Mutual Insurance Company and Marisa Culbertson, states as follows:

1. Plaintiff Maura Anne Kreitzer (hereinafter sometimes referred to as "plaintiff Kreitzer") is an adult individual and resident of Ohio County, West Virginia.

2. Defendant Safeco Insurance Company of America (hereinafter sometimes referred to as defendant "Safeco") is a is a foreign corporation licensed to conduct the business of insurance in the State of West Virginia and has a service of process address listed with the West Virginia Secretary of State of c/o Corporation Service Company, 209 W. Washington St., Charleston, WV 25302

and with a principal office address of 100 Liberty Way, Dover, New Hampshire 03820.

3. Defendant Liberty Mutual Insurance Company (hereinafter sometimes referred to as defendant "Liberty Mutual") is a is a foreign corporation licensed to conduct the business of insurance in the State of West Virginia and has a service of process address listed with the West Virginia Secretary of State of c/o Corporation Service Company, 209 W. Washington St., Charleston, WV 25302 and with a principal office address of 175 Berkeley, Boston, Massachusetts 02116.

4. Based upon information and belief, defendant Marisa Culbertson is a resident of Hamilton County, Ohio with a residential address of 4711 Heger Dr, Cincinnati, OH 45217.

5. Defendant Marisa Culbertson is a senior claim resolution specialist with Liberty Mutual and Safeco who was assigned and responsible for plaintiff Kreitzer's claim for underinsured motorist coverage.

6. At all relevant times, plaintiff Kreitzer was insured by Safeco Insurance Company of America through a policy of automobile insurance procured by Citywide Insurance and Financial Services in Wheeling, Ohio County, West Virginia.

7. The applicable policy of underinsured motorist coverage bore policy number K2799758.

8. Defendants Culbertson, Safeco and Liberty Mutual have represented to plaintiff, by and through her counsel, that policy number K2799758 provides underinsured motorist coverage in the amount of $25,000 per person.

9. At all times relevant herein, Marissa Culbertson was acting as an agent, employee and senior claim resolution specialist for Liberty Mutual and Safeco.

10.    The Circuit Court of Ohio County, West Virginia has subject matter jurisdiction over the contract of insurance which was entered into in Wheeling, Ohio County, West Virginia.

11.    The Circuit Court of Ohio County, West Virginia has subject matter jurisdiction over the case.

12.    The Circuit Court of Ohio County, West Virginia may properly exercise jurisdiction over the parties to this action.

13.    The Circuit Court of Ohio County, West Virginia is a proper venue for this action.

14.    At all times material and relevant, plaintiff was covered by a policy of insurance issued by defendant Safeco Insurance Company of America.

### The Crash

15.    On or about March 21, 2018, the plaintiff suffered a covered loss under the subject policy.

16.    Plaintiff substantially complied with all requirements and policy provisions of the subject policy of insurance.

17.    On March 21, 2018, in Bridgeport, Ohio, on a public roadway known State Route 2, plaintiff Kreitzer was lawfully stopped at the intersection of Aetna

Street and State Route 2, when James Beck recklessly and negligently operated a 2003 Dodge Ram Pickup in such a manner and with such great force as to violently strike and cause a rear-end collision with plaintiff Kreitzer's 2012 Hyundai Sonata vehicle.

18.    The impact of the collision was substantial and plaintiff Kreitzer's 2012 Hyundai Sonata was a total loss.

19.    The substantial collision also caused serious personal injuries, damages and losses to plaintiff Kreitzer as set forth in detail hereinbelow.

20.    James Beck, as alleged hereinbefore, was negligent and reckless and careless toward the plaintiff in one or more of the following areas, among others in the operation of said 2003 Dodge Ram Pickup, including violating the Motor Vehicle Code Safety laws of the state of Ohio, including, but not limited to:

a.    Failing to yield the right of way;

b.    Failing to keep a reasonable and proper lookout;

c.    Failing to maintain control of said vehicle;

d.    Failing to maintain proper and safe speed;

e.    Failing to obey and traffic control device;

f.    Violating statutes of the state of Ohio and local ordinances;

g.    Failing to exercise due care generally in the operation of said vehicle;

h.    Operating said vehicle in a manner unsuited to the roadway;

i.    Failing to operate said vehicle in accordance with existing traffic conditions;

j.    Failing to apply the brakes of said vehicle in time to avoid the motor vehicle collision;

k.    Failing to observe traffic which was lawfully on the roadway;

l.    Operating said vehicle at an excessive rate of speed under the circumstances;

m.    Following too closely;

n.    Failing to keep an assured and clear distance ahead;

o.    Traveling at an excessive rate of speed in a manner that would not allow her to stop;

p.    Driver inattention and/or distracted driving; and/or

q.    Other acts and omissions which may become apparent through discovery in this matter.

21.    As a direct and proximate result of the carelessness, negligence, recklessness and violations of law by James Beck, plaintiff Kreitzer was injured and damaged a hereinafter set forth.

22.    As a direct and proximate result of the carelessness, negligence, recklessness and violations of law by James Beck, plaintiff Kreitzer was caused injury to the following parts of her body: in and about her body, head, neck, back, shoulders, extremities, body chemistry, both internally and externally, and inasmuch as all or part of plaintiff Kreitzer's injuries are permanent and lasting in nature, plaintiff Kreitzer has and will in the future endure physical, mental and emotional pain, suffering and impairment.

23.    As a further direct and proximate result of the carelessness, negligence and recklessness and violations of law, plaintiff Kreitzer has been caused to incur medical expenses for care and treatment to date in an amount as yet undetermined, and inasmuch as all or part of plaintiff's injuries are permanent and lasting in nature, plaintiff Kreitzer has and will in the future suffer medical expenses for care and treatment rendered in an effort to effect a cure for her injuries.

24.    As a further direct and proximate result of the carelessness, negligence and recklessness and violations of law, plaintiff Kreitzer has suffered a diminution in her ability and capacity to care for herself and enjoy a normal life.

25.    As a further direct and proximate result of the carelessness, negligence and recklessness and violations of law, plaintiff Kreitzer has been prevented from carrying out the duties and responsibilities of her life and has been prevented from leading her life socially and recreationally as she had prior to this motor vehicle accident.

26.    As a further direct and proximate result of the carelessness, negligence and recklessness and violations of law, plaintiff Kreitzer has suffered past lost wages and/or lost income and/or a loss of future earning capacity.

### The Claim

27.    On April 27, 2018, attorney David A. Jividen, Jividen Law Offices, PLLC, directed correspondence to Safeco Insurance via U.S. mail and certified mail 7014 3490 0000 6055 6815. The letter advised Safeco Insurance *inter alia*

that Jividen Law Offices had been retained to represent Maura Kreitzer in all matters pertaining to the collision described hereinabove.

28.      The extent of Safeco's investigation of the plaintiff's claim is unknown to the plaintiff.

29.      Safeco paid medical payments coverage under the subject policy of insurance in the amount of one-thousand dollars ($1,000.00).

30.      Safeco requested and received Medicare Secondary Payer forms which were signed by Maura Kreitzer.

31.      On September 26, 2022, plaintiff's counsel directed correspondence to Ebon Moore, CPCU, Sr. Claim Resolution Specialist I, BI, Safeco Insurance Company of America providing notice of a proposed settlement with the tortfeasor to the underinsured carrier pursuant to W.Va. Code § 33-6-31e.

32.      The September 26, 2022 correspondence states, in pertinent part, Attorney Matthew Mullen, Krugliak Wilkins Griffiths & Dougherty Co., LPA, has extended a settlement offer on behalf of State Farm in the amount of $45,000, plaintiff requests consent to settle, waiver of subrogation and that Safeco evaluate the claim on behalf of its policyholder under the applicable UIM policy.

33.      The settlement offer of $45,000 constructively exhausts the $50,000 policy limits of State Farm Mutual Automobile Insurance Company's policy number 894-2954-F18-35.

34.      The value of Mrs. Kreitzer's claim far exceeds the $50,000 policy limits.

35.    State Farm's frontline adjuster and State Farm's policyholder's counsel both valued Mrs. Kreitzer's claim in excess of the policy limits, but that State Farm management only authorized $45,000.

36.    The September 26, 2022 correspondence provides Safeco full and complete medical records which substantiate the plaintiff's claim for underinsured motorist coverage benefits.

37.    The September 26, 2022 correspondence provides medical bills which total approximately $37,785.29.

38.    The September 26, 2022 correspondence provides a report from Alicia Trbovich, PhD, UPMC Sports Medicine Concussion Program which corroborates and substantiates the plaintiff's claim for underinsured motorist coverage benefits.

39.    Dr. Trbovich's report supplements plaintiff's expert witness disclosures.

40.    The September 26, 2022 correspondence also provides the Rule 35 report of defense medical examiner Dr. Paul D. Nussbaum, Ph.D., ABPP which was paid for by State Farm.

41.    Dr. Trbovich concludes that it is unclear that Mrs. Krietzer made a complete recovery from the concussion she sustained on March 21, 2018. However, Dr. Nussbaum concludes that Mrs. Kreiters "demonstrates relative deficits on measures of Working Memory and Processing Speed. The latter reduce her overall general intelligence to the average range, slightly less than expected given her estimated premorbid intelligence. Her performance on other measures

of cognitive performance similarly is variable with normal verbal free recall, verbal abstraction and visuospatial/constructional skill. In contrast, she demonstrates impairment on tasks measuring rapid visual sequencing and mental flexibility."

42.     Dr. Nussbaum's report also indicates that Mrs. Kreitzer has a premorbid high IQ, that her working memory and processing speed fall in the low average and borderline range and are responsible for a reduced IQ presumably as a result of closed head injury and mild-traumatic brain injury. For example, the report states that Dr. Nussbaum's testing demonstrates low average ability on a measure of auditory attention and visuomotor speed and that Mrs. Kreitzer's performance on a measure of rapid visual matching falls in the borderline range.   The report further indicates that Dr. Nussbaum "completed four measures that comprise the domain of complex attention/processing speed. Each of these measures has a mean of 10 and a standard deviation of 3." According to Dr. Nussbaum, Mrs. Kreitzer's "[s]cores fall within the borderline to average range with generally reduced ability relative to her estimated premorbid intelligence." The examination also concludes that in reference to Mrs. Kreitzer's verbal abstraction ability, her "performance on a measure of rapid visual-motor sequencing (Trails A) falls in the impaired range (T 20) due to slowed speed. On a similar, but more complex task in which she was asked to alternate rapidly between numbers and letters fell in the impaired range primarily to slowed speed."

43.    All of this information further militates in favor of the conclusion that Mrs. Kreitzer suffers an increased risk of dementia.

44.    For example, a very recent study concludes "TBI in older veterans was associated with a 60% increase in the risk of developing dementia over 9 years after accounting for competing risks and potential confounders. Our results suggest that TBI in older veterans may predispose toward development of symptomatic dementia and raise concern about the potential long-term consequences of TBI in younger veterans and civilians...Other risk factors examined include depression, posttraumatic stress disorder (PTSD), and cerebrovascular disease (CVD)." Traumatic Brain Injury and Risk of Dementia Older Veterans, Deborah E. Barnes, Ph.D. et al, Neurology 83 July 22, 2014; see also Rowland, Merritt's Neurology, 11th ed. (2005), p. 775, Table 107.3.

45.    Research shows that "neurotrauma is a provocative agent in the development of AD, and severs support to the association between TBI and AD at the statistical, theoretical, and biological level. Lye et al., Traumatic Brain Injury as a Risk Factor for Alzheimer's Disease: A Review, Neuropsychology Review, vol. 10, no. 2 (2000), pp 119, 125. "The brains of patients with TBI have histopathogenic features of Alzheimer disease, and patients with TBI are more likely to develop Alzheimer disease, of which one component is brain atrophy ... TBI results in chronic degeneration. MacKenzie et al., Brain Atrophy in Mild or Moderate Traumatic Brain Injury, 23 Am. J. Neuroradiol 1509-1515 (Octo 2002), p. 1514.

46.     "World War II veterans with documented head injuries were assessed for dementia more than 50 years later.  Those who had moderate to severe TBIs as young men had higher prevalence of Alzheimer's disease than did veterans without TBI." Lezak et al., Neuropsychological Assessment, 4th ed. (2004), p. 209.  "[P]laying professional football is associated with a significantly higher risk of permanent brain damage," including dementia. Amen et. al., Impact of Plaing American Professional Football on Long-Term Brain Function, J Neuropsych Clin Neurosci 23:1 (Winter 2011), pp 103-04.

47.     "Previously, postmortem histopathologic analysis of brains from boxers with demensia pugilistica ("punch-drunk syndrome") revealed neurofibrillary tangles and diffuse plaques composed of amyloid-$\beta$ peptides (A$\beta$s) similar to the hallmark lesions of Alzheimer disease (AD).  Subsequently, a single incident of brain trauma was shown to induce the formation of A$\beta$ peptides has been found in the cerebrospinal fluid of brain-injured patients. Smith et al., Diffuse Axonal Injury in Head Trauma, J Head Trauma Rehab, vol. 18, no. 4 (2003), p. 310.

48.     It is well settled that premorbid psychiatric conditions are associated with increased risk of a prolonged recovery from concussion.  Prediction of risk of prolonged post-concussion symptoms: Derivation and validation of the TRICORDRR (Toronto Rehabilitation Institute Concussion Outcome Determination and Rehab Recommendations) score, Langer LK, Alavinia SM, Lawrence DW, Munce SEP, Kam A, et al. (2021) Prediction of risk of prolonged post-concussion symptoms: Derivation and validation of the TRICORDRR

(Toronto Rehabilitation Institute Concussion Outcome Determination and Rehab Recommendations) score. PLOS Medicine 18(7): e1003652. https://doi.org/10.1371/journal.pmed.1003652.

49.     Dr. Trbovich's report indicates "some studies have found increased risk of psychiatric conditions, including anxiety and depression, years after a concussion." See e.g., Fann, J.R., Hart, T., Schomer, K.G.. Treatment for Depression after Traumatic Brain Injury: A Systematic Review. Journal of Neurotrauma 26:2383-2402, 2009; Stein MB et al. Posttraumatic stress disorder and major depression after civilian mild traumatic brain injury: A TRACK-TBI study. JAMA Psychiatry. January 30, 2019; Eur J Anaesthesiol Suppl. 2008;42:123-30. doi: 10.1017/S0265021507003250.

50.     Beyond her traumatic brain injury, Mrs. Kreitzer suffers a post-traumatic bulging disc at C5-6 with neck pain, headache disorder, occipital neuralgia, myofascial muscle pain and depression.   In addition to post-concussion syndrome and cervicalgia, the automobile crash is also responsible for temporomandibular joint dysfunction.

51.     In light of the foregoing and pursuant to West Virginia Code § 33-6-31e(b)(1)-(6), plaintiff requested Safeco Insurance Company of America waive subrogation, consent to settlement and agree to a Release of the tortfeasor to the extent of any financial contribution.

52.     On October 12, 2022, defendant Marisa Culbertson, Sr. Claim Resolution Specialist I, Cas, emailed plaintiff's counsel on behalf of Liberty Mutual and Safeco and advised that she was the new adjuster on the case.

53.    Defendant Culbertson indicated that she was in the process of reviewing the September 26, 2022 demand for underinsured motorist coverage.

54.    Defendant Culbertson's October 12, 2022 correspondence indicated that Liberty Mutual and Safeco consent to the settlement.

55.    Defendant Culbertson's October 12, 2022 correspondence did not waive subrogation and agree to a Release of the tortfeasor to the extent of any financial contribution. Rather defendant Culbertson demanded a copy of the release and the declaration's page to confirm the tortfeasor has $50,000.00 of liability insurance.

56.    This request was forwarded to counsel for State Farm's insured James Beck on October 12, 2022.

57.    On October 20, 2022, defendant Culbertson again demanded a copy of the declarations page and/or release from State Farm confirming their limits and settlement as a condition precedent to adjusting the underinsured motorist coverage claim.

58.    In response to this request, plaintiff inquired whether or not it was Liberty Mutual and Safeco's corporate policy to require that the tortfeasor's carrier provide demonstrative evidence of its liability limits before consent to settle and waiver of subrogation is made pursuant to W.Va. Code § 33-6-31e.

59.    Thereafter defendant Culbertson indicated that Liberty Mutual and Safeco "already consented to allowing" the plaintiff "to accept the Tortfeasor's offer of $45K for settlement of the BI claim." Again, defendant Culbertson remained silent regarding the waiver of subrogation.

60.    In an effort to facilitate the settlement, attorney Mullen directs email confirmation of the tortfeasor's policy limits and a .pdf copy of James Beck's declarations page to defendant Culbertson on October 20, 2022.

61.    On October 24, 2022, plaintiff directed correspondence to defendants Culbertson, Liberty Mutual and Safeco.   The October 23, 2022 explains that waiver of subrogation is a prerequisite to plaintiff's right to pursue a UIM claim.   The October 24, 2022 correspondence states,

> Please state whether or not Liberty Mutual and Safeco Insurance waive their right to subrogation. W. Va.Code, § 33–6–31(f). *Arndt v. Burdett[e]*, [189 W.Va. 722], 434 S.E.2d 394 (1993); *State ex rel. AllState [Ins. Co. v. Karl*, [190 W.Va. 176, 437 S.E.2d 749 (W.Va.1993). "West Virginia's highest court has addressed the issue of exhaustion on several occasions, and has never voided an exhaustion requirement in a UIM policy on public policy grounds." *Draughn v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 1:13CV148, 2014 WL 1408064, at *3 (N.D.W. Va. Apr. 11, 2014).
>
> Syllabus Point 4 of *Postlethwait v. Bos. Old Colony Ins. Co.*, makes it clear that "[a] plaintiff is not precluded under W.Va.Code, 33–6–31(d) (1988), from suing an uninsured/underinsured insurance carrier if the plaintiff has settled with the tortfeasor's liability carrier for the full amount of the policy **and obtained from the uninsured/underinsured carrier a waiver of its right of subrogation against the tortfeasor.**" 189 W. Va. 532, 533, 432 S.E.2d 802, 803 (1993)(emphasis added).

62.    On October 26, 2022, defendant Culbertson directs electronic mail to plaintiff's counsel indicating that State Farm waives its medical payments coverage subrogation interest.

63.    Thereafter, defendant Culbertson spoke with plaintiff's counsel over the telephone regarding the instant claim.   Plaintiff's counsel requested (a) that Safeco Insurance Company of America and defendant Culbertson provide copies

of the UM/UIM selection rejection forms and the Important Notice required by W.Va. Code § 33–6–31d; and (b) that defendant Culbertson indicate in writing that the policyholder's insurer was waiving subrogation *against the tortfeasor*.

64.    During the course of the conversation, plaintiff's counsel explained the need for Safeco to waive subrogation against the tortfeasor.

65.    At this time, defendant Culbertson, on behalf of Liberty Mutual and Safeco, extended a settlement offer of $4,000 for plaintiff's underinsured claim. Plaintiff's counsel requested that Safeco reduce its offer to writing and explain its analysis and the factual basis for its valuation.

66.    Having received no electronic mail from defendant Culbertson, plaintiff's counsel directed written correspondence to memorialize the important conversation. The October 31, 2022 letter states, in pertinent part,

> Please indicate whether Liberty Mutual and Safeco are waiving subrogation *against the tortfeasor*. The ongoing refusal to document the same in writing prevents our office from accepting the settlement with the tortfeasor.
> ...
> I also requested that you reduce Liberty Mutual and Safeco Insurance companies' settlement offer of $4,000.00 to writing and explain your analysis and the factual basis for your valuation. Not only did you not do that, you did not extend this offer in writing. Has Liberty Mutual and Safeco withdrawn its settlement offer?
>
> Because you neither indicated that Liberty Mutual and Safeco are waiving subrogation against the tortfeasor nor reduced the settlement offer to writing, it is unclear whether Liberty Mutual and Safeco have withdrawn the settlement offer and intend to seek subrogation against the tortfeasor. Please clarify the corporate position regarding these matters.
>
> Irrespective of the same, please allow this correspondence to memorialize that out client is unwilling to accept the sum of $4,000 as full and final settlement of her underinsured motorist coverage claim. This sum is profoundly inadequate.

67.     On November 7, 2022, plaintiff received a letter dated October 27, 2022 documenting that Safeco, "has decided to waive subrogation interests on this claim, as well." The November 7, 2022 letter ignored plaintiff's request for the pertinent UM/UIM selection rejection forms and the Important Notice required by W.Va. Code § 33-6-31d and instead offered to provide copies of the plaintiff's declarations page. It also documents that Safeco and Liberty Mutual have valued the plaintiff's underinsured motorist claim at the woefully inadequate sum of $4,000.00.

68.     On November 8, 2022, plaintiff directed correspondence to defendants Culbertson, Liberty Mutual and Safeco which states:

> Frankly, I am disappointed by the manner in which this claim has been handled and the manner in which Ms. Kreitzer is being treated by her insurer. An insurer is in a position to take advantage of an insured's misfortune by bargaining for settlement or resolution of the claim for less than the true amount owed. The insurer has control over the investigation, evaluation, processing, and denial of the claim. The insurer also has superior knowledge and spending power following a loss. This unequal power creates an enhanced duty on the insurer to place the interests of its insured at least equal as its own. "The insurance company must take into account the interest of its insured and give its insured's interest at least as much consideration as it gives its own interest." *Shamblin v. Nationwide Mut. Ins. Co.*, 183 W. Va. 585, 593, 396 S.E.2d 766, 774 (1990).
>
> Part of every policy is a promise that the parties will deal fairly with one another. This implied covenant of good faith and fair dealing requires that neither party do anything to impact the right of the other to receive the benefit of the agreement. When an insured purchases insurance, part of what s/he pays for is a reasonable and even-handed investigation. It is the duty and responsibility of the insurer to investigate. It is the insured's responsibility to cooperate with the investigation, not to undertake the investigation or incur the cost. This duty to investigate is central to proper claim handling.

The first party claims process is not adversarial. The AIC (Associate in Claims) textbook, *The Claims Environment* explains this principle by acknowledging that when an insured purchases insurance, part of what is paid for is *a reasonable and even-handed investigation.*[1] Markham, First Edition, 1993.

This tenant is central to proper claim handling,

> In a claim adjustment process, the claim is investigated, coverage and liability are determined, damages are measured, and if necessary, the claim is litigated. These tasks are carried out either by staff employees of the insurance company or by outside claim – adjusting services. Professionals and specialists in various fields, as well as fellow employees in the insurance company, also lend their support to the process.

Markham, *The Claims Environment*, First Edition, 1993, p. 27.

"The primary duty of the claim representative is to deliver the promise to pay. Therefore, the claim representative's chief task is to seek and find coverage, not to seek and find coverage controversies or to deny or dispute claims." *Id.* at p. 13. The text goes on later to state, "Good faith claim practices require that this investigation be objective, thorough, and timely." *Id.* at p. 29.

69.     Defendants Liberty Mutual and Safeco were provided adequate information to value the plaintiff's claim for underinsured motorist coverage under the subject policy and the plaintiff is entitled to the same.

---

[1] Industry standards include this obligation and are clearly detailed in the, *The Claims Environment* where it states, "A thorough investigation is the foundation of good faith claim handling. Claim representatives must conduct a prompt and objective investigation, using the right personnel and collecting all relevant evidence. Investigation should continue as long as new facts develop or become available." Markham, First Edition, 1993, p. 249.

70.    The essential purpose of underinsured motorist coverage is to put the insured in the same position as if the at-fault driver had adequate coverage and/or financial health to pay for all of the damages a jury would award the insured for the accident and injury.

71.    Underinsured motorist coverage is a first party coverage and design to fully compensate the insured, up to policy limits, so that the insured does not have to go through the laborious process of taking the at fault driver to trial.

72.    Plaintiff seeks underinsured motorist coverage up to the policy limits under her appliable policy of Safeco Insurance Company of America automobile insurance.

73.    Defendants Liberty Mutual and Safeco by and through defendant Culbertson and/or other agents, employees, adjusters, claims personnel and management have engaged in a pattern of wrongful conduct, including but not limited to unfair claim settlement practices which rise to the level of a general business practice as a direct and proximate result of the defendants corporate business model and have engaged in insurance bad faith and unfair trade practices prohibited by West Virginia law.

### COUNT I

### Breach of Contract

74. The plaintiff incorporates all paragraphs stated hereinabove by reference as if fully restated herein verbatim.

75. The plaintiff paid Safeco Insurance Company of America and Liberty Mutual Insurance Company policy premiums in consideration for underinsured motorist coverage.

76. Safeco and Liberty Mutual in consideration for said premium did issue to the plaintiff a policy of insurance.

77. The parties to this suit have a contract for insurance which provides coverage to the plaintiff at the time of the March 21, 2018 loss.

78. The plaintiff suffered a covered loss under the subject insurance contract.

79. The plaintiff has complied with all terms and conditions of the insurance contract.

80. Safeco and Liberty Mutual failed and/or refused to provide the insurance coverage that it contracted for with the plaintiff and is in breach of the subject insurance contract.

81. Plaintiff's injuries, damages and losses over and above the limits of the tortfeasor's insurance are recoverable under the plain language of the applicable policy of insurance.

82. Plaintiff's injuries, damages and losses far exceed the limits of the tortfeasor's liability limits and the plaintiff is owed underinsured motorist coverage benefits under the subject policy of insurance.

83. The defendants by and through their agent, employees, adjusters, managers and/or supervisors, including defendant Culbertson, engaged in acts and/or omissions which breach of the covenant of good faith and fair dealing and/or breach the contract of insurance and cause the plaintiff injury and damages.

84. Damages caused by said breach of contract and/or breach of the covenant of good faith and fair dealing include, but are not necessarily limited to loss of insurance policy proceeds under the subject policy, economic loss, attorney's fees, litigation costs,

annoyance, inconvenience, and other consequential losses for which the plaintiff should

be compensated.

## COUNT II

### Violation of the UTPA and Common Law Bad Faith

85. The plaintiff incorporates all paragraphs stated hereinabove by reference as if fully

restated herein verbatim.

86. Defendants Liberty Mutual and Safeco by and through their agents, employees,

adjusters, managers, and/or supervisors, including but not limited to defendant

Culbertson, engaged in unfair claim settlement practices in violation of West Virginia

Code § 33-11-4(a) in at least the following particulars:

a. Failing to acknowledge and act reasonably promptly upon communications with
respect to claims arising under insurance policies;

b. Failing to adopt and implement reasonable standards for the prompt investigation
of claims arising under insurance policies;

c. Refusing to pay claims without conducting a reasonable investigation based upon
all available information;

d. Not attempting in good faith to effectuate prompt, fair, and equitable settlements
of claims in which liability has become reasonably clear;

e. Compelling insureds to institute litigation to recover amounts due on an insurance
policy by failing to make any offer of settlement prior to litigation;

f. Failing to promptly settle claims, where liability has become clear requiring the
plaintiff to file suit to collect monies due to them pursuant to the insurance policy; and/or

g. Other violations hereinafter discovered.

87. The acts and omissions of defendants Culbertson, Safeco and Liberty Mutual

violated various provisions of Title 114, of the Legislative Rules of the Insurance

Commission of the State of West Virginia.

88. In addition to the foregoing, the acts and/or omissions of defendant Culbertson, Safeco and Liberty Mutual, in the handling of the plaintiff's first-party claims were in breach of the covenant of good faith and fair dealing and amount to common law bad faith against the plaintiff.

89. The acts of defendant Culbertson, Safeco and Liberty Mutual as described above, were intentionally undertaken by it in a willful, wanton, and/or reckless manner.

90. All of the acts and omissions of defendants Liberty Mutual and Safeco by and through their agents, representatives and employees, were committed with such frequency as to indicate a general business practice, where required by law.

91. The acts and omissions of defendant Safeco and Liberty Mutual by and through its agents, representatives, and employees, in the handling of the claims of the plaintiff were intentional, willful, and outrageous in character, and were done in bad faith without regard to the rights of the plaintiff.

92. The acts and omissions of Safeco and Liberty Mutual, by and through their agents, representatives, and employees, caused the plaintiff to sustain severe emotional distress, mental anguish, inconvenience, annoyance, embarrassment, and other general damages.

93. The acts and omissions of Safeco and Liberty Mutual, by and through their agents, representatives, and employees, caused the plaintiff to incur substantial costs, expenses, economic losses, and attorney's fees.

94. The actions of Safeco and Liberty Mutual, in the handling of the plaintiff's claims were done willfully, maliciously, and with careless disregard for the rights of the plaintiff.

95. The acts and omissions of Safeco and Liberty Mutual by and through its agents, representatives, and employees, were so outrageous that the plaintiff is entitled to recover punitive damages from the defendant in order to punish the defendants and to deter them, and other insurance companies, from engaging in similar conduct in the future.

## DAMAGES

96.     The plaintiff incorporates all paragraphs stated hereinabove by reference as if fully restated herein verbatim.

97.     The acts and omissions of Safeco and Liberty Mutual, by and through their agents, representatives, and employees, including but not limited to Culbertson, caused the plaintiff to suffer loss of use of the insurance proceeds due and owing under the policy of underinsured motorist coverage.

98.     The acts and omissions of Safeco and Liberty Mutual, by and through their agents, representatives, and employees, including but not limited to Culbertson, caused the plaintiff to sustain severe emotional distress, mental anguish, inconvenience, annoyance, embarrassment, and other general damages.

99.     The acts and omissions of the Safeco and Liberty Mutual, by and through their agents, representatives, and employees, including but not limited to Culbertson, caused the plaintiff to incur substantial costs, expenses, economic losses, and attorney's fees.

100.     The actions of Safeco and Liberty Mutual, in the handling of the plaintiff's claims were done willfully, maliciously, and with careless disregard for the rights of the plaintiff.

101.    The acts and omissions of Safeco and Liberty Mutual, by and through their agents, representatives, and employees, including but not limited to Culbertson, were so outrageous that the plaintiff is entitled to recover punitive damages from the defendant in order to punish the defendant and to deter it, and other insurance companies, from engaging in similar conduct in the future.

**WHEREFORE**, the plaintiff, Maura Kreitzer, hereby prays for compensatory and punitive damages against the defendants, Safeco Insurance Company of America, Liberty Mutual Insurance Company and Marisa Culbertson in an amount in excess of the jurisdictional threshold of this Court and in an amount sufficient to fully compensate the plaintiff for her injuries and damages and punish and/or deter the defendants and deter others from acting similarly in the future, for attorney's fees and costs where allowable by law, for pre- and post-judgment interest where allowable by law, and for such additional favorable relief as the Court deems just and appropriate.

<u>**A JURY TRIAL IS DEMANDED ON ALL ISSUES.**</u>

Respectfully Submitted,
Maura Kreitzer, plaintiff,

BY:    _____**/s/George N. Sidiropolis, Esquire**_____

GEORGE N. SIDIROPOLIS, ESQUIRE (#10391)
DAVID A. JIVIDEN, ESQUIRE (#1889)
**Jividen Law Offices, PLLC**
729 N. Main Street
Wheeling, WV 26003
Phone: (304) 232-8888
Facsimile: (304) 232-8555
*Of Counsel for Plaintiffs*

CERTIFIED MAIL

US POSTAGE ᴾᴮ PITNEY BOWES

ZIP 25305
02 4W
0000377395 NOV 21 2022
$ 008.16